UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DESHAUN STATEN,**

                **Plaintiff,**

v.                                                       Case No. 21-CV-529

**LUCINDA BUCHANAN,** *et al.***,**

                **Defendants.**

---

## DECISION AND ORDER

---

Plaintiff DeShaun Staten, who is representing himself and confined at the Wisconsin Resource Center, brings this lawsuit under 42 U.S.C. § 1983. Staten was allowed to proceed on an Eighth Amendment claim for deliberate indifference to his medical needs and related state law claims alleging the defendants failed to treat his back and wrist pain between May 2020 and July 2020. The defendants filed a motion for summary judgment. (ECF No. 49.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 14, 20.)

### PRELIMINARY MATTERS

The defendants argue that Staten failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to their motion for summary judgment, failing to substantively dispute their proposed findings of fact. (ECF No. 66 at 1-2.)

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in the light

most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Staten's proposed findings of fact do not formally conform with the rules, his response contains sufficient facts to allow the court to rule on the defendants' summary judgment motion. The court notes that Staten submitted affidavits that are dated well before this case was filed; however, it appears he intended these as exhibits to support his proposed findings of fact, and the court will construe them as such. Staten also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011).

As such, the court will consider the information contained in Staten's submissions where appropriate in deciding defendants' motion.

**FACTS**

On February 6, 2020, the Health Services Unit (HSU) at Columbia Correctional Institution (where Staten was housed at the time) received a Health Services Request (HSR) from Staten stating he had been having lower back pain for over three weeks. (ECF No. 51, ¶ 27.) Staten's HSR also stated that the medication he was on was not helping the pain. (*Id.*) Non-defendant Nurse Valerius responded to Staten's HSR and scheduled him a visit with a nurse for the next day, February 7. (*Id.*) The record does not state what happened at that visit.

On February 18, 2020, HSU received another HSR from Staten, stating that this was the third time he was writing because his back pain still had not been addressed. (ECF No. 51, ¶ 29.) An unidentified nurse referred Staten's HSR to

2

Case 2:21-cv-00529-WED   Filed 07/13/23   Page 2 of 13   Document 67

defendant Health Services Unit Manager Lucinda Buchanan. (*Id.*) The defendants note that, at the time, Columbia was experiencing "severe staffing shortages which required HSU staff to prioritize those HSRs that contained more urgent medical needs." (*Id.*, ¶ 30.) Buchanan reviewed Staten's HSR "and determined it was not an emergent medical need that required her immediate response." (*Id.*) Buchanan also noted that Staten had other medical appointments on the schedule where he could bring up his back pain. (*Id.*) On March 11, 2020, Buchanan responded to Staten's February 18 HSR, noting that he had had an EMG on March 6 for his lower back pain. (*Id.*, ¶ 31.) She told him she would schedule an appointment so Staten could learn the results of the EMG. (*Id.*) It is unclear from the record when this appointment was scheduled, but the court notes that this was the very beginning of the COVID-19 pandemic, which caused significant delays in providing treatment. (*Id.*, ¶ 33.)

On April 27, 2020, HSU received another HSR from Staten, this one stating that he had been waiting for four months to see HSU about his back and wrist pain. (ECF No. 51, ¶ 32.) Staten stated that HSU had not scheduled an appointment nor did anyone prescribe ice for his wrist. (*Id.*) That same day an unidentified non-defendant nurse responded to Staten's HSR, telling him that HSU was currently working on scheduling to see him. (*Id.*) On May 4, 2020, defendant Health Services Assistant Manager Gareth Fitzpatrick referred Staten to see defendant Dr. Justin Ribault for his back pain. (*Id.*, ¶ 34.) Dr. Ribault was scheduled to see Staten on May 15, 2020, for his back pain. (*Id.*, ¶ 38; ECF No. 52-1 at 39.)

On May 15, 2020, the day Staten was scheduled to see Dr. Ribault, Staten was on a hunger strike and refused to leave his room. (ECF No. 51, ¶ 38.) Dr. Ribault asserts he went to see Staten at his cell for both health issues related to the hunger strike and Staten's back pain, but Staten refused to be seen. (*Id.*) Instead, Staten was "sitting on his bed, playing cards and was not looking away from his cards." (*Id.*) Dr. Ribault considered this a refusal of the appointment. (*Id.*) Staten asserts that Dr. Ribault came to his cell only for the hunger strike. (ECF No. 59 at 2.) However, Staten's medical records indicate that the appointment was for "chronic back pain" and show that Dr. Ribault understood that Staten did not believe his medications were working for his back pain. (ECF No. 52-1 at 34.) Dr. Ribault recommended an appointment be scheduled the following week. (*Id.*)

On June 18, 2020, HSU received another HSR from Staten in which he inquired as to when his appointment for his back pain was scheduled. (ECF No. 51, ¶ 39.) An unidentified non-defendant nurse responded to the HSR, informing Staten that he had appointment scheduled for his back and wrist pain. (*Id.*) On June 28, 2020, HSU received an additional HSR from Staten again asking about his appointment for his back and wrist pain, and an unidentified non-defendant nurse responded that his appointment was scheduled for the following week. (*Id.*, ¶ 40.) The record does not indicate what happened at that appointment, but medical records indicate that the appointment occurred on July 16, 2020. (ECF No. 52-1 at 17.)

When Dr. Ribault examined Staten for his wrist and back pain on July 16, he noted that Staten had refused to see him on May 15, 2020. (ECF No. 51, ¶ 43.) At the

4

July 16 visit Dr. Ribault observed that Staten's "back pain was non-radiating at his lumbar region; he was functioning normally and had intermittent tightness." (*Id.*, ¶ 44.) Dr. Ribault decided to place an order for a "baseline lumbar x-ray". (*Id.*, ¶¶ 44, 46.) As for Staten's wrist, Dr. Ribault noted that Staten had mobility and determined the pain was likely caused by a benign cyst. (*Id.*, ¶ 45.) To treat Staten's chronic pain related to his wrist and back, considering the prescribed pain medications were not working, Dr. Ribault recommended physical therapy. (*Id.*)

On July 21, 2020, Staten had an x-ray taken of his back. (ECF No. 51, ¶ 47.) On August 1, 2020, non-defendant Nurse Block wrote Staten a letter disclosing the results of the x-ray, which showed "only mild disc height loss of your low back." (*Id.*, ¶ 48.) Nurse Block noted that such an issue "can be caused by degenerative aging changes . . . [or] degenerative disease." (*Id.*) The x-ray did not show anything "acute or abnormal". (*Id.*) Nurse Block also indicated that Staten was scheduled to see an advance care provider for both his back pain and his hunger strike, although the date of the appointment is not in the record. (*Id.*)

After July 2020 Dr. Ribault did not again see Staten for his back pain or wrist pain. (ECF No. 51, ¶ 50.) Staten's medical records indicate that the other advance care provider who is named as a defendant, Dr. Ellen O'Brein, examined Staten only once, for foot pain caused by a basketball injury between May 2020 and July 2020. (*Id.*, ¶ 54.) During the June 12, 2020, appointment, Staten did not mention his back or wrist pain and the medical records do not indicate that they were discussed at that appointment. (*Id.*, ¶ 55.) In his response materials, Staten implies that Dr. O'Brien

5

should have been aware of these issues because of his medical history and acted accordingly. (ECF No. 59 at 1.)

The court notes that neither Buchannan nor Fitzpatrick were involved in providing medical care to Staten, and their interaction with him during the relevant time period was limited to dealing with HSRs as noted above. ((ECF No. 51, ¶¶ 56-64.)

The defendants assert that, between May 2020 and July 2020, Staten consistently refused treatment for his back and wrist pain, including topical ointments designed to help the pain. (ECF No. 51, ¶ 42.) Staten does not dispute this, asserting that he continued to file HSRs because the ibuprofen, acetaminophen, and "the rubs" were not working. (ECF No. 60 at 1.) Specifically, Staten states that he wanted a referral to an outside provider, the University of Wisconsin Hospital in Madison, but nowhere in the medical records does it note he made this request. (*Id.* at 2.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Staten claims that the defendants violated his Eighth Amendment rights because they failed to timely treat his wrist and back pain. A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate this, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a

7

lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

To show that a prison official was subjectively and deliberately indifferent, a plaintiff must demonstrate "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id.* The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. App'x. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).

The parties dispute whether Staten's back pain, which is caused by degenerative aging or a degenerative disease, and his wrist pain, which is caused by a benign cyst, are objectively serious medical conditions. Even assuming that Staten's back and wrist pain were objectively serious medical conditions, taking the facts in the light most favorable to Staten no reasonable jury could conclude that the defendants were deliberately indifferent to the conditions.

8

*Dr. O'Brien*

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

Staten does not provide any evidence that would allow a reasonable factfinder to conclude that Dr. O'Brien knew about his issues with his wrist and back. At most, he implies that Dr. O'Brien should have been aware of his issues because of his HSRs and medical history, but this is mere speculation on his part. While a non-movant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Summary judgment is granted in Dr. O'Brien's favor.

*Buchanan and Fitzpatrick*

It is undisputed that neither Buchanan nor Fitzpatrick were involved in Staten's treatment; their roles were limited to responding to a couple of Staten's HSRs. For both defendants, Staten asserts that their delay in responding constituted deliberate indifference. "Delaying treatment may constitute deliberate indifference if such delay 'exacerbated the injury or unnecessarily prolonged an inmate's pain.'"

*Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *McGowen v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The delays must be "inexplicable." *Petties*, 836 F.3d at 730. The Seventh Circuit has noted that "delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

Staten sought medical attention during the beginning of the COVID-19 pandemic, when even unincarcerated people had medical appointments delayed or canceled. While Buchanan did delay her response to Staten's February 18 HSR by nearly a month, in her professional opinion she determined that his condition was not emergent. Her decision to delay a response was reasonable in light of the circumstances. Buchanan further noted that Staten had appointments scheduled, including an EMG to address the back pain, so she reasonably concluded that his conditions were not being ignored. No reasonable factfinder could conclude that she was deliberately indifferent to his conditions. The court also notes that Buchanan's involvement took place before the May 2020-July 2020 time period of Staten's claim that he was allowed to proceed with in the screening order, so any claim against her is not at issue in this case. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013). Thus, summary judgment is granted in her favor.

Fitzpatrick responded to Staten's April 27, 2020, HSR on May 4, 2020, by scheduling him to see Dr. Ribault on May 15, 2020. Given the fact that Staten's condition was not emergent, and considering the conditions created by the pandemic, it is difficult to even characterize the five-day period between Fitzpatrick learning of

10

the HSR and his response to it by scheduling Staten to see Dr. Ribault as a "delay." Certainly no reasonable jury could conclude it was an unreasonable delay. No reasonable factfinder could conclude that Fitzpatrick was deliberately indifferent. Summary judgment is granted in his favor.

*Dr. Ribault*

A question of fact exists as to whether Dr. Ribault examined Staten for his conditions on May 15, 2020. Dr. Ribault says Staten would not let him; Staten says Dr. Ribault visited him at his cell only for the purpose of addressing his hunger strike. In any event, Staten's medical records contradicts Staten's version of events. "Where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 327, 376 (2007). Staten's medical records show that Dr. Ribault attempted to examine him for his pain complaints in addition to issues related to his hunger strike, but he refused his appointment. Thus, no reasonable factfinder could conclude that Dr. Ribault was deliberately indifferent on May 15.

Nor could a reasonable factfinder conclude that Dr. Ribault was deliberately indifferent in his treatment of Staten's pain generally between May 2020 and July 2020. When Staten complained that his pain medications were not working, Dr. Ribault scheduled an x-ray and recommended physical therapy as an alternative to the medications Staten had been taking. Although Staten asserts that he should have

11

been sent to an outside provider, simply disagreeing "about the proper course of treatment . . . is insufficient to overcome summary judgment." *Stallings*, 607 F. App'x at 593.

As stated above, Staten must show that Dr. Ribault's actions were so questionable that it is doubtful he actually exercised professional judgment. *Id.* Staten has failed to do so. Summary judgment is granted in Dr. Ribault's favor.

## CONCLUSION

For the foregoing reasons the defendants' motion for summary judgment on Staten's Eighth Amendment claims is granted and those claims are dismissed. At screening, the court exercised supplemental jurisdiction over Staten's Wisconsin state law claims. Now that the court has granted summary judgment in favor of the defendants and dismissed the federal claims, the court declines to continue to exercise jurisdiction over Staten's state law claims. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015). Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 49) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this

court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 13th day of July, 2023.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge